**Steven APPLEWHITE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 27, 1979.

Wayne Taylor, C. W. Miles, III, Union City, for appellant.

William M. Leech, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Nashville, David G. Hayes, Dist. Atty. Gen., Union City, for appellee.

OPINION

DAUGHTREY, Judge.

The appellant-defendant, Steven Applewhite, and his wife, Betty Applewhite, were jointly indicted and tried for the burglary and larceny of the Troy Pharmacy in Obion County, Tennessee, and for possession of certain controlled substances taken during the burglary. Steven Applewhite was convicted of larceny and sentenced to three to six years imprisonment, and he was convicted of possession of controlled substances with the intent to resell and sentenced to three to five years imprisonment. His wife was acquitted of the burglary charge and given a 30 day sentence for simple possession of a controlled substance. She does not appeal.

One of the errors urged before this court concerns the failure of the grand jury foreman to sign one of the two indictments returned against Applewhite. A review of the technical record indicates that the burglary and larceny charges are listed as counts one and two of an indictment numbered 2541, endorsed a true bill, and returned on May 2, 1978 by the Obion County Grand Jury sitting at the May 1978 term. Among the items listed in the larceny count is "a quantity of controlled substances including Elavil (Amitripthine HCI, MSD), Valium, Anturane, Butazoliden. . . ." This instrument bears the signature of the Attorney General on its face, but is not signed by the grand jury foreman in the designated space provided on its reverse side. A second indictment charges the felonious possession of "Elavil (Amitripthine, HCI, MSD), Valium, Anturane, Butazolidin," and bears No. 2540. It is also endorsed a true bill, and it is signed by the grand jury foreman as having been returned on May 2, 1978. Like the other charging instrument, it emanates from the May 1978 term of the Obion County Grand Jury.

No objection was raised prior to trial to the grand jury foreman's failure to sign both documents, nor was this omission brought to the trial court's attention in the defendant's motion for a new trial. It was first assigned as error before this court, the defendant insisting that the larceny indictment is void and that the resulting conviction is therefore void. In support of this contention, the defendant cites the requirement in the Tennessee Constitution, Art. 1, § 14, that "no person shall be put to answer any criminal charge but by presentment, indictment or impeachment," and dictum in *State v. Herron*, 86 Tenn. 442, 445, 7 S.W. 37, 38 (1888) to the effect that an "indictment, without the endorsement, 'A true bill,' followed by the signature of the foreman of the grand jury, is utterly worthless, and devoid of any legal efficiency whatever."

T.C.A. § 40–1706 provides that an "indictment cannot be found without the concurrence of at least twelve (12) jurors, and,

when so found, shall be endorsed 'A true bill,' and the endorsement signed by the foreman." While in some jurisdictions a similar statutory requirement has been held to be directory only, see, e. g., *Gasper v. District Court*, 74 Idaho 388, 264 P.2d 679 (1953); *People v. Wilson*, 7 Ill.App.3d 158, 287 N.E.2d 211 (1972); *State v. Fisher*, 172 Iowa 462, 154 N.W. 587 (1915); *Prior v. State*, 265 A.2d 486 (Me.1970); *State v. Mitchell*, 260 N.C. 235, 132 S.E.2d 481 (1963); *State v. Lombardo*, 20 N.J.Super. 317, 90 A.2d 39 (1952), it appears under long-standing Tennessee law that the endorsement and signature of the grand jury foreman must be considered mandatory. *Gunkle v. State*, 65 Tenn. 625 (1873); *State v. Herron, supra; Canupp v. State*, 97 Tenn. 635, 37 S.W. 547 (1896); *Bird v. State*, 103 Tenn. 343, 52 S.W. 1076 (1899). Accord *Strickland v. State*, 51 Ala.App. 328, 285 So.2d 492 (1973); *Owens v. State*, 61 So.2d 412 (Fla.1952); *Walker v. State*, 251 Ind. 432, 241 N.E.2d 792 (1968); *State v. Ferguson*, 240 La. 593, 124 So.2d 558 (1960), *cert. denied* 366 U.S. 913, 81 S.Ct. 1089, 6 L.Ed.2d 237; *State ex rel. Roberts v. Maxwell*, 189 N.E.2d 736 (Ohio App. 1962) (dictum); *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).

However, the majority rule appears to be that the failure to endorse or sign the indictment does not deprive the trial court of jurisdiction over the person of the defendant or the offense, so as to make any resulting conviction void. See, e. g., *Goulden v. State*, 292 Ala. 704, 299 So.2d 325 (1974); *State ex rel. Henderson v. Boone Circuit Court*, 246 Ind. 207, 204 N.E.2d 346 (1965). This is because in modern pleading practice (which tends to be less hypertechnical than its common law predecessor), the foreman's signature has come to be viewed as "a procedural safeguard rather than a substantive requisite of an indictment," such that "its presence or absence does not materially affect any substantial right of the defendant; and . . . neither assures to him nor prevents him from having a fair trial." *Nicholas v. Thomas*, 382 S.W.2d 871, 872 (Ky.1964); accord *People ex rel. Cook v.*

*Twomey,* 21 Ill.App.3d 788, 315 N.E.2d 614 (1974). Thus it has been held that "the function of the endorsement and signature is to identify and authenticate the indictment," *State v. Morris,* 223 So.2d 743, 745 (Fla.App.1969), and that an indication of its proper return in open court serves substantially the same function. It has also been held that an omission in the endorsement or signature may be cured by amendment to the original indictment. *Bassham v. State,* 38 Tex. 622 (1873); *People ex rel. Moye v. Elrod,* 17 Ill.App.3d 433, 308 N.E.2d 176 (1974).

For all these reasons, we are persuaded that the State is correct in its position that in order to provide a basis for a finding of error on appeal, the omission of the foreman's signature should have been brought to the trial court's attention prior to the defendant's plea to the merits. Such a requirement has been adopted in other jurisdictions by court rule, *Nicholas v. Thomas, supra* at 872, or by case law, *State v. Boone Circuit Court, supra,* 204 N.E.2d at 350. We thus hold that the defendant's failure to make a timely motion to dismiss, thereby depriving the court of the opportunity to allow the correction of the alleged deformity in the indictment, constituted a waiver of a later objection to the omission of the foreman's signature, where it appears *on the record* that an otherwise valid indictment, endorsed "a true bill," was properly returned into court.

Although this is a case of first impression, Tennessee law supports our conclusion that the defect in this indictment did not vitiate the court's jurisdiction over the subject matter and could therefore be waived. In *State v. Simmons,* 199 Tenn. 479, 287 S.W.2d 71 (1956), our Supreme Court held that the constitutional requirement that "no person shall be put to answer in a criminal charge but by presentment, indictment or impeachment" is a personal right which may be waived. There the court found it constitutionally permissible to permit the defendant to waive indictment and to be tried on a misdemeanor charge before a magistrate. *Accord* Tennessee Rules of Criminal Procedure, Rule 5(c). Likewise, the constitutional provision may be waived and upon his consent a defendant may be prosecuted by means of a criminal information. T.C.A. §§ 40–301, 40–306, and 40–307; Tennessee Rules of Criminal Procedure, Rule 7. We therefore overrule the assignment of error attacking the validity of the indictment.

■ In his remaining assignments of error, the defendant challenges the sufficiency of the evidence to support the jury's verdict. The proof shows that the pharmacy was burglarized at some time during the weekend of April 22–24, 1978. Taken in the burglary were some 8,000 narcotic capsules and tablets, various items of jewelry, cologne, several scarves, cameras, and 20 Timex watches. Acting on information supplied by an informant, the local sheriff obtained a search warrant for a house occupied by Steven and Betty Applewhite and by Betty's mother, who owned the premises to be searched. The warrant was executed on May 1, 1978, at a time when only Betty Applewhite and the three Applewhite children were present. She led the sheriff to a bedroom which she apparently occupied jointly with the defendant (it contained the clothes and personal effects of both Steven and Betty Applewhite). There she turned over a large quantity of drugs which she took from a closet and from "between the mattresses" of their bed. Also recovered were bottles of cologne, a camera and some jewelry later identified as having come from the pharmacy. She initially told the sheriff that Steven had brought the drugs into the house, but she later recanted this statement, and at trial she testified that the narcotics were brought to the house the night before the search by two unidentified men who, she said, claimed to be Steven's friends. She further testified that her husband was out of town at the time the two strangers appeared.

The defendant took the stand in his own behalf. He denied any complicity in the burglary and offered an alibi defense. He testified that he had been living at his mother-in-law's house during April 1978,

that he stayed at the house all during the night before the burglary was discovered, that he was there for three or four days after that time, and that he then went to Memphis and was in Texas when his "friends" showed up with the narcotics. He insisted that he therefore knew nothing about the presence of any drugs at his place of residence. His alibi was supported by the testimony of his wife, his mother-in-law, and his daughter.

By their verdict, the jury clearly rejected Steven Applewhite's alibi defense and Betty Applewhite's explanation of how the narcotics came to be found in their bedroom. This was within the jury's prerogative. *Maxwell v. State*, 1 Tenn.Cr.App. 335, 441 S.W.2d 503 (1969); *Tackett v. State*, 223 Tenn. 176, 443 S.W.2d 450 (1969); *Smith v. State*, 2 Tenn.Cr.App. 117, 451 S.W.2d 716 (1969). We have no difficulty in concluding that a rational trier of fact could then conclude that Steven Applewhite had been in possession of the recently stolen items and contraband seized by the Sheriff pursuant to the search warrant, and that he was guilty of larceny in conjunction with the drug store burglary and of felonious possession of a controlled substance. See Tennessee Rules of Appellate Procedure, Rule 13(e), and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We therefore overrule the defendant's assignments of error relating to the sufficiency of the convicting evidence.

The judgment of the trial court is affirmed.

WALKER and O'BRIEN, JJ., concur.